**CITY AND BOROUGH OF SITKA, State of Alaska, and Alaska Lumber and Pulp Co., Inc., a Corporation, Appellants,**

v.

**CONSTRUCTION AND GENERAL LABORERS LOCAL 942, International Unions of Operating Engineers Local 302, and Teamsters Local 959, State of Alaska, Appellees.**

No. 5774/5811.

Supreme Court of Alaska.

May 7, 1982.

James F. Clark, Robertson, Monagle, Eastaugh & Bradley, Juneau, and Peter S. Hallgren, Sitka, for appellants.

Bruce Monroe and Paul L. Dillon, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Juneau, for appellees.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from the judgment of the superior court which held that a timber sale contract executed between Alaska Lumber and Pulp Co., Inc. (ALP) and the City and Borough of Sitka (Sitka) was subject to the provisions of Alaska's "Little Davis-Bacon Act," AS 36.05.010.110. The logging and related clearing took place on land Sitka owned and upon which the Green Lake Hydroelectric Project, a dam, was to be built. The superior court further held that pursuant to a stipulation negotiated by the parties, the Unions were entitled to an award of damages. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During 1974 Sitka began planning the Green Lake Project as a source of hydroelectric power. In 1977 the State of Alaska withdrew land needed for the Project from federal ownership pursuant to its statehood land acquisition rights. It then conveyed the land to Sitka on March 16, 1979.

In March 1979, Sitka published its intent to receive sealed bids through May 1 for the construction of the Green Lake Project. The bid offering, Contract No. 3, originally set out all the specifications for the construction of the dam, including the timber clearing specifications.[1]

On April 19, 1979, ALP submitted an irrevocable offer to pay Sitka two million dollars for the right to remove the commercial timber and to accomplish the clearing in accordance with the pertinent specifications set forth in Contract No. 3.

---

1. Sitka submits that it never intended to include the timber clearing with the dam construction bid offering. When Sitka Municipal Administrator, Fermin Gutierrez saw that the engineering consultant firm which had prepared the bid offering had included the timber clearing within Contract No. 3, Gutierrez directed the firm to analyze the cost differential between a separate timber sale contract and including the timber clearing in the dam contract. Ultimately, the firm concluded that a separate timber sale contract would be to Sit-

ka's advantage, ostensibly because many dam contractors would not view the timber as a commercial asset.

The Unions dispute whether Sitka always intended for the timber contract to be separate from the dam construction contract. However, since the Unions obtained summary judgment below, we must construe all disputed factual inferences in Sitka's favor. *See Kodiak Island Borough v. Large*, 622 P.2d 440, 446 (Alaska 1981).

Sitka promptly published Addendum No. 2 to Contract No. 3 in order to notify prospective bidders that Sitka would award a separate contract for substantially all of the reservoir clearing. Sitka stated that to be awarded this separate contract, the bidder would have to offer more than ALP offered. Addendum No. 2 noted that ALP had offered to pay $2,000,000.00 to perform the reservoir clearing pursuant to the requirements of Contract No. 3.

The bids were opened on May 15. Sitka awarded the dam construction contract to S. J. Groves and Company and the timber sale contract to ALP. Sitka and ALP signed on June 13, 1979 an agreement entitled "Timber Sale Contract." The ALP-Sitka contract provided that Contract No. 3 was incorporated by reference. The original bid offering, Contract No. 3, stipulated that Little Davis-Bacon was applicable.[2] All parties agree that the dam construction contract is subject to the Act. The parties dispute, however, whether Addendum No. 2 exempted from the wage provision employees engaged in the severed logging and clearing activities, the work ultimately performed by ALP.[3] The ALP-Sitka contract did not contain any express wage stipulations.

The Alaska Department of Labor has the authority pursuant to AS 36.05.030 to determine whether a contract is subject to Little Davis-Bacon.[4] In April 1979, Sitka received a form letter from the Wage and Hour Division of the Department stating that the proposed timber sale contract would be subject to the Act. Sitka disagreed with that conclusion, and persuaded the Director of the Division, Dale Cheek, to investigate the matter further. The Director subsequently stated his tentative opinion that the Act did not apply to the timber sale contract. An advisory memorandum issued by the Office of the Attorney General reached a similar result.[5]

The Department of Labor declined, however, to issue a formal determination of Little Davis-Bacon coverage.[6] As a result, in June 1979 two workers filed a complaint in superior court containing two causes of action against Sitka and ALP (hereafter collectively referred to as Sitka). The first

2. The relevant provision in Contract No. 3 provided:
   303.12 Section 205.10, "Wage Rates".
   a. The contractor or its subcontractor shall pay wages which are not less than the current prevailing rate of wages as determined by the Alaska Department of Labor for labor of a similar nature in the region in which the work is done. The rate of wages shall be adjusted to the wage rate for each pay period as applicable under AS 36.05.010.

3. The Unions submit that the reference to Contract No. 3 incorporated the general wage stipulation set forth in section 303.12 of the contract. Sitka contends that Addendum No. 2 distinguished between the Contractor and the Clearing Contractor. The Clearing Contractor, in Sitka's view, was bound only by those sections of Contract No. 3 *specifically* required of the Clearing Contractor. As a consequence, Sitka's interpretation of Addendum No. 2 is that only the Contractor was bound by the wage stipulation.
   For purposes of this appeal, we will accept Sitka's interpretation of Addendum No. 2. *See supra* note 1. Accordingly, our disposition of this appeal is not based upon an interpretation of the timber sale contract.

4. AS 36.05.030(a) provides in pertinent part:
   The Department of Labor has the authority to determine the prevailing wage, and whether or not sections 10–110 of the chapter are being violated.
   *See Fowler v. City of Anchorage,* 583 P.2d 817, 820 (Alaska 1978).

5. The relevant portion of the advisory memorandum provided:
   While it is apparent that the contract between AL&P and Sitka necessarily involves work preparatory to the construction of the Green Lake Hydro Project to be performed by a general contractor, it is equally apparent that the primary purpose of the contract is one involving timber sales, not construction of a public work.
   Accordingly, it is our view that the provisions of AS 36.05.010 do not apply to the contemplated contract between [Sitka] and [ALP].
   Memorandum from Bruce Botelho, Assistant Attorney General, to Dale Cheek (May 15, 1979).

6. The superior court requested briefing from the parties regarding the propriety of remanding the matter to the Department of Labor. Both parties opposed the remand.
   We do not decide whether the Department of Labor is required pursuant to AS 36.05.030 to issue a formal determination of Little Davis-Bacon coverage where such coverage is disputed.

cause of action set forth various charges against the proposed Sitka-ALP timber contract. The second cause of action alleged, in effect, that the workers had received less than the prevailing wage in violation of Little Davis-Bacon.

In August 1979 all parties entered into a stipulation which was then filed with the superior court and signed by the judge. Pursuant to the stipulation, the Construction and General Laborers Local 942, the International Union of Operating Engineers Local 302 and the Teamsters Local 959 (hereafter collectively referred to as the Unions) were substituted as plaintiffs. Both the Unions and Sitka gave up certain rights in the stipulation. The Unions agreed not to seek a preliminary injunction or other injunctive relief. Sitka agreed not to raise procedural defenses. The parties also stipulated as follows:

> 5. Plaintiffs seek declaratory relief in this case. In the event the court rules in Plaintiffs' favor, on those issues raised in Plaintiffs' Second Cause of Action, it is agreed that Plaintiffs' remedy will be in the form of damages to be paid to workers doing the work, which is the subject matter of this lawsuit, in accordance with Alaska law. Damages shall be paid to the workers as ordered by the Court, but in no event shall the sum ordered paid to the workers exceed the gross amount of Fifty One Thousand Dollars ($51,000.00).

After entering into the stipulation, both parties moved for summary judgment. The sole issue disputed was whether the Sitka-ALP timber contract was for "public construction" and thus covered by Little Davis-Bacon. The superior court ruled that the timber contract was for public construction. Accordingly, the court granted summary judgment to the Unions on November 3, 1980.

One portion of the judgment awarded the Unions as damages the back wages which the workers would have received if ALP had paid them the prevailing wage. On April 6, 1981, the United States Supreme

Court held that the federal Davis-Bacon Act, 40 U.S.C. § 276a (1969), (hereafter referred to as Davis-Bacon), does not provide workers a private cause of action for back wages under a contract which administratively has been determined not to call for Davis-Bacon work. *Universities Research Association, Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). Relying on *Universities Research*, ALP filed a motion in superior court on April 24 to set aside the portion of the judgment which awarded the Unions damages. ALP argued that Little Davis-Bacon does not give the Unions a private right of action to recover back wages. ALP also contended that the award of damages should be set aside because no evidence on damages existed in the record. Sitka filed on May 8 a memorandum in support of ALP's motion. The superior court denied the motion on June 1, 1981, holding that paragraph 5 of the stipulation, quoted above, precluded consideration of the issue.

Sitka and ALP appeal. They submit (1) that the court erred in holding that the timber contract concerned public construction subject to Little Davis-Bacon coverage, and (2) that it was improper for the court to award the Union damages. For the reasons discussed below, we affirm the superior court judgment.

## II. TIMBER SALE CONTRACT

The principal issue presented on appeal is whether the work performed pursuant to the ALP-Sitka contract was "public construction" subject to the wage protections afforded by Little Davis-Bacon.[7] AS 36.05.-010 provides in part:

> A contractor or subcontractor who performs work on public construction in which the state, as defined by AS 36.95.-010(3), shall pay not less than the current prevailing rate of wages for work of a similar nature in the region in which the work is done.

See *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 516 n.22 (Alaska 1980).

---

7. We employ de novo review to the question of law raised by the summary judgment motion.

Public construction is defined in AS 36.95.-010(3) as "the on-site field surveying, erection, rehabilitation, alteration, extension or repair, including painting or redecorating of buildings, of highways or other improvements to real property under contract for the state, a political subdivision of the state; ..."

All parties properly agree that a timber sale contract is typically not subject to the Act. Sitka, accordingly, labels the disputed contract a "timber sale contract," arguing that any site preparation work was incidental to the dominant purpose of the contract, the sale of timber. The Unions, on the other hand, argue that the sale of merchantable timber was incidental to the site preparation necessary for the construction of the Green Lake Project, and thus characterize the contract as a "clearing contract." The labels employed by the parties are merely the conclusions of a more substantive analysis. The dispositive issue in our view is whether a contract, which may independently be outside the scope of Little

Davis-Bacon, may nonetheless be subject to the Act where the specified work is substantially related to "public construction."

No prior Alaska court has addressed this issue. We turn, therefore, to federal authorities pertaining to the federal Davis-Bacon Act, 40 U.S.C. § 276a (1969), the model of the Alaska statutory scheme. *See Fowler v. City of Anchorage*, 583 P.2d 817, 821 (Alaska 1978); *1961 Op. Att'y Gen. No. 17* at 4 (Alaska, August 8, 1961).[8]

The federal regulations, 29 C.F.R. §§ 4.116(b)(1), 5.2(f) and 5.2(g) (1980), clearly indicate that clearing done at a dam site in preparation for the dam's construction is "construction" within the purview of Federal Davis-Bacon.[9] Section 5.2(g) defines construction under Davis-Bacon as "all types of work done on a particular building or work at the site thereof." "Building" or "work" is defined in section 5.2(f) as including: [10]

*without limitation*, buildings, structures, and improvements of all types, such as bridges, *dams*, plants, highways, park-

---

**8.** It is useful here to set out the statutory construction rules for Alaska statutes modelled after those of other jurisdictions. A rebuttable presumption arises that when Alaska bases a statute on one from another jurisdiction, it adopts into the Alaska statute all previous cases from the other jurisdiction's statute. *Zerbe v. State*, 583 P.2d 845 (Alaska 1978); *Nicholson v. Sorensen*, 517 P.2d 766, 770 n.9 (Alaska 1973). *See also Fowler v. City of Anchorage*, 583 P.2d 817 (Alaska 1978). There is no such presumption when the cases from the other jurisdiction are decided *after* Alaska adopts its statute, though such cases may be persuasive. *Nicholson v. Sorensen*, 517 P.2d at 770 n.9.

No federal cases address the question of whether logging preliminary to dam construction is subject to Davis-Bacon coverage. The most important federal authorities to have discussed this issue are 29 C.F.R. §§ 4.116(b)(1), 5.2(f) and 5.2(g) (1980). Sections 5.2(f) and (g) were promulgated in 1951, before AS 36.95.-010(3), which defines "public construction," became law in 1972, but after the original sections of Little Davis-Bacon became law in 1931. While this court is not bound by the federal regulations, we will look to the federal regulations construing Davis-Bacon for assistance in interpreting Little Davis-Bacon.

**9.** The parties refer to three position letters promulgated by the United States Solicitor of Labor. The most recent letter, dated December

13, 1961 states that the clearing and selling of timber preliminary to dam building is not itself "construction" under federal Davis-Bacon. That opinion, however, does not discuss 29 C.F.R. §§ 5.2(f) and (g). It is also noteworthy that the December 13, 1961 letter opinion is contradicted by two other Solicitor of Labor opinions. One opinion, dated May 23, 1961, was signed by Charles Donahue, the same Solicitor of Labor who signed the other opinion discussed above. The May 23 opinion discusses a contract in which the Forest Service permits Boise Cascade to log timber in exchange for money and the construction of permanent roads within the national forest. The opinion states that Davis-Bacon covers the logging of timber preliminary and necessary to build the roads but not the other logging. The second opinion, dated September 27, 1960, concluded that the clearing of timber necessary to build a runway and aircraft parking for the navy was public construction.

The parties do not cite to any more recent positions adopted by the United States Solicitor of Labor with respect to the scope of Davis-Bacon coverage.

**10.** The federal government has proposed changes in 29 C.F.R. Part 5 (1980). *See* 44 Fed. Reg. 77,080 (1979). Sections 5.2(f) and (g) remain unchanged, however, except that they are renumbered sections 5.2(i) and (j).

ways, streets, subways, tunnels, sewers, mains, power lines, pumping stations, railways, airports, terminals, docks, piers, wharves, ways, light houses, buoys, jetties, break-waters, levees, canals, dredging, shoring, rehabilitation and reactivation of plants, scaffolding, drilling, blasting, excavating, *clearing*, and landscaping. [Emphasis added.]

Section 4.116(b)(1) was promulgated in 1968 pursuant to the McNamara-O'Hara Act. This act regulates service contracts with the federal government. It exempts from its requirements the contracts which the Davis-Bacon Act covers. Section 4.116(b)(1) states in part:

For example, a contract for clearing timber or brush from land or for the demolition or dismantling of buildings or other structures may be a contract for construction activity subject to the Davis-Bacon Act where it appears that the clearing of the site is to be followed by the construction of a public building or public work at the same location. If, however, no further construction activity at the site is contemplated the Davis-Bacon Act may be considered inapplicable to such clearing. . . .

■ We conclude that the federal regulations set forth an appropriate test to establish the parameters of Little Davis-Bacon. Accordingly, the focus of inquiry in determining whether the ALP-Sitka contract concerned "public construction" subject to the Act is the extent to which the work relates to the construction of the dam.

■ The superior court, properly employing this analytic approach, concluded that "the predominant characteristic [sic] is that the work to be done is an integral part of the dam construction and is therefore 'public construction'." We agree. The logging occurred on the dam site, land acquired from the state expressly for the purpose of constructing the dam and its watershed. Moreover, it is uncontroverted that the clearing specifications incorporated by ref-

erence in the contract were intended to render the site suitable for the construction of the dam. The fact that the clearing work was initially included in the bid offering is further evidence of the strong linkage between the ALP-Sitka contract and the construction of the dam. In sum, the logging and related clearing work performed by ALP pursuant to the contract was preliminary and essential to building the dam, and would not have occurred when it did but for the dam.

■ Sitka rejects this mode of analysis. Sitka instead submits that the determination of Little Davis-Bacon coverage should only reflect the isolated characteristics of the timber contract without consideration of the broader context in which the contract arose. Sitka thus argues that once severed from the dam construction bid, the ALP-Sitka contract is essentially the same as any other timber sale contract, and is therefore outside the scope of Little Davis-Bacon coverage. We recognize, in this regard, that the disputed contract does in fact have many of the attributes of a prototypical timber sale contract.

Sitka's position, however, unduly exalts form over substance. Had the logging remained in the parent construction bid, it is clear that the wage protections would have been applicable. That Sitka determined that it was to its benefit to sever the logging and clearing work is functionally irrelevant. It is the nature of the work and the relationship of the logging work to the dam project which are the salient considerations.

■ Sitka's reliance on the fact that the timber contract was severed from the dam contract is misplaced for the additional reason that such a rule would thwart the policies which underly Little Davis-Bacon. The fundamental purpose of Little Davis-Bacon is to assure that employees engaged in public construction receive at least the prevailing wage. The focus of the Act, quite clearly, is to the benefit of the employees, not the contracting principals.[11] To argue

11. Courts construing federal Davis-Bacon recognize the paternalistic design of the Act: "The

language of the Act and its legislative history plainly show that it was not enacted to benefit

that Sitka should be allowed to maximize the economic benefit to be derived from the sale of merchantable timber simply miscasts the focus of the Act. Presumably, ALP would have payed Sitka less for the right to remove the timber had the timber contract been determined to be subject to Little Davis-Bacon wage guarantees. Quite unlike the mythical sailor torn between Syclla and Charybdis, Sitka found itself in the enviable position of having to choose whether to maximize the return from the sale of timber or whether to stipulate that Little Davis-Bacon wage guarantees attached to the contract. Where "public construction" is involved, however, the legislature has provided that the tension must be resolved in favor of the employees. Sitka's position, in essence, invites the government to sever from a public construction bid offering any aspect of the endeavor which may have an unrelated profit incentive, such as the removal of a natural resource. Such a rule impermissibly enables a public agency to profit at the expense of workers engaged in activities instrumental to a public construction project.

Sitka also argues that the logging should not be considered public construction because ALP paid Sitka to log the timber whereas in the typical public construction contract the public agency pays the contractor. Sitka notes that AS 36.05.070(a) applies only to "a public construction contract exceeding $2,000." The statutory language cited by Sitka is plainly intended to restrict Little Davis-Bacon coverage to "substantial" public construction projects, i.e., those in excess of $2,000. The ALP-Sitka contract concerns an activity which can hardly be characterized as insubstantial. Viewing only the timber transaction, Sitka has conferred on ALP a benefit, the merchantable timber, which is valued by the parties at two million dollars.[12]

 ⬛ In support of its contention that it is the flow of money from the government to a private contractor which is determinative of Little Davis-Bacon coverage, Sitka notes that AS 36.05.070(c)(4) requires the contracting public agency to withhold payments to contractors who violate the Act by failing to pay the prevailing wage. Sitka argues that section 36.05.070(c)(4) is the enforcement mechanism of the Act. The mechanism fails to work when, as in the instant case, the contractor pays the public agency rather than vice versa. Actually AS 36.05.070(c)(4) is only one of several enforcement mechanisms under the Act. The other enforcement mechanisms work equally well whether the contractor pays the public agency or the public agency pays the contractor. Under AS 36.05.060, violators of Little Davis-Bacon can be prosecuted criminally. AS 36.05.080 permits the contracting agency to terminate the contract if the contractor violates the Act by not paying the prevailing wage. AS 36.05.090(b) permits the workers to sue for back wages.[13] Under AS 36.05.030 the Department of Labor has the power to investigate violations, including the power to hold hearings where it can compel the attendance of witnesses and the production of books, papers and documents. Thus, we conclude that adequate enforcement mechanisms exist regardless of whether the money flows from the government to a private contrac-

contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." *U.S. v. Binghamton Cons. Co.,* 347 U.S. 171, 177, 74 S.Ct. 438, 441, 98 L.Ed. 594, 599 (1953). *See Walsh v. Schlecht,* 429 U.S. 401, 411, 97 S.Ct. 679, 686, 50 L.Ed.2d 641, 650 (1977).

**12.** Once a sufficient nexus has been established between a contract and a public construction project, we may look to the value of the entire endeavor to ascertain if the $2,000 threshold requirement has been satisfied.

**13.** AS 36.05.090(b) provides in part:

If the accrued payments withheld under the contract are insufficient to reimburse all the laborers, mechanics, or field surveyors with respect to whom there has been a failure to pay the wages required under section 70 of this chapter, the laborers, mechanics or field surveyors have the right of action or intervention or both against the contractor and his sureties conferred by law upon persons furnishing labor or materials. . . .

As we discuss in part III, *infra,* the scope of the workers' private right of action remains undetermined.

tor, or from the contractor to a public agency.

## III. PRIVATE RIGHT OF ACTION

■ Sitka next contends that even if the logging work is deemed to be public construction within the meaning of Little Davis-Bacon, the Act does not authorize a private right of action for back wages.[14] As a consequence, Sitka submits that the award of damages was inappropriate. In paragraph 5 of the 1979 stipulation, however, Sitka agreed that if the Unions prevailed in the litigation, the remedy would be damages paid to the workers. The threshold inquiry, therefore, is whether or not to give effect to the stipulation agreed to by the parties.

The parties dispute the nature of the stipulation. The Unions characterize the stipulation as an "issue stipulation," and thus invoke the settled rule that such stipulations are binding on the parties.[15] Sitka, on the other hand, submits that the question of whether or not Little Davis-Bacon authorizes employees or their representatives to maintain a private right of action to recover back wages is a legal issue and thus cannot be foreclosed by stipulation.[16]

In our prior cases we have dealt with stipulations which merely foreclose consideration of a legal issue in a different fashion than stipulations which seek to resolve without judicial scrutiny a legal question.

Issue stipulations, on the one hand, save time and money for the litigants and for the court. *Godfrey v. Hemenway*, 617 P.2d 3, 8 (Alaska 1980); *Interior Credit Bureau v. Bussing*, 559 P.2d 104, 106 (Alaska 1977); *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1031 (Alaska 1972). Moreover, issue stipulations are oftentimes a negotiated compromise in the parties' respective legal positions. Accordingly, we have on several prior occasions given effect to a stipulation which foreclosed consideration of a legal issue. *Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 39 n.19 (Alaska 1980), is a recent example. In that case the parties stipulated that plaintiffs would raise only four identified constitutional challenges to ordinances regulating and licensing massage parlours in Anchorage. We rejected on appeal the plaintiff's attempt to raise constitutional challenges not sanctioned by the stipulation. Similarly, we have enforced a stipulation which precluded consideration of a due process challenge to the composition of a medical review committee,[17] and one which precluded consideration of the respective rights of the City and Borough of Anchorage regarding the installation of utility lines.[18]

---

**14.** At issue is whether the right of action authorized in AS 36.05.090(b) where a contract contains wage stipulations is also available where the contract in dispute does not contain wage stipulations. The United States Supreme Court held that federal Davis-Bacon does not provide workers a private cause of action to recover back wages where there has been an administrative determination of no Davis-Bacon coverage. *Universities Research Association, Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). We do not reach this issue.

**15.** *Fieser v. Stinnett*, 509 P.2d 1156, 1159 (Kan. 1973). *See generally* 83 C.J.S. Stipulations § 22 (1953).

**16.** Sitka relies on *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 114, 60 S.Ct. 1, 6, 84 L.Ed. 110, 119 (1939) to support its contention that a stipulation which prevents consideration of a legal issue is void. In *Case*, one party argued that in a stipulation his adversary had waived his right to attack the fairness of a plan. The Supreme Court ruled that even if under the terms of the stipulation the adversary had waived his right to attack the plan's fairness, the court still would permit the adversary to make the attack. The court declared that as a matter of law "a stipulation does not foreclose legal questions."

In *Utah v. United States*, 394 U.S. 89, 89 S.Ct. 761, 22 L.Ed.2d 99 (1969), however, the Supreme Court implicitly overruled *Case*. The court ruled that parties to a lawsuit may generally limit the issues which are tendered to the court for decision. Specifically, the court found valid a stipulation between Utah and the United States which precluded the parties from raising certain legal issues. *See also Perera Co. v. Goldstone*, 491 F.2d 386, 388 (9th Cir. 1974).

**17.** *Storrs v. Lutheran Hosp. and Homes Soc'y of America, Inc.*, 609 P.2d 24, 28 (Alaska 1980).

**18.** *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1031 (Alaska 1972). The court noted that "[s]ound judicial policy

We recently reiterated, on the other hand, that "[a]lthough the parties' efforts toward simplifying the issues in a case are always appreciated, stipulations as to the law are not binding upon the court." *Dresser Industries, Inc. v. Alaska Department of Labor*, 633 P.2d 998, 1004 (Alaska 1981). *See generally* 73 Am.Jur.2d. Stipulations § 5 (1974). Unlike stipulations which limit the issues presented to a court, stipulations as to questions of law may have a profound impact on third parties, the public, and the judicial process itself. Accordingly, we have refused to give effect to stipulations regarding a question of law which unduly interfere with vital interests of the public or which impermissibly impinge on judicial functions. *Dresser Industries, Inc. v. Alaska Department of Labor*, 633 P.2d at 1004 (Alaska 1981); *Harris v. Morris*, 531 P.2d 517, 519 (Alaska 1975); *Marks v. State*, 496 P.2d 66, 67 (Alaska 1972).[19]

We conclude that Sitka's agreement that the Unions' "remedy will be in the form of damages . . . in accordance with Alaska law" necessarily encompassed a waiver of any legal issue which would defeat the award of damages. Sitka agreed not to raise procedural defenses and that damages would be the appropriate remedy were the Unions to prevail. The Unions, in return, agreed to dismiss the first cause of action, challenging the validity of the contract, and most importantly, to forego any attempt to obtain injunctive relief. Abandoning any entitlement to injunctive relief was a sig-

nificant concession, since the cost attendant any delay in the construction of the project would undoubtedly have been substantial. The work now completed, it is of course impossible to "rescind" the stipulation and to return the parties to their respective status quo ante positions. It is particularly noteworthy that at the time the stipulation was negotiated, Sitka did not contend that the Unions could not maintain a private right of action to recover back wages. Only after the United States Supreme Court announced its decision in *Universities Research*, several months subsequent to the superior court's entry of summary judgment in favor of the Unions, did Sitka question the effect of the stipulation.

Sitka's attempt to classify the stipulation in dispute as one pertaining to a question of law is not persuasive. To be sure, the question of whether Little Davis-Bacon confers a private right of action to recover back wages is a question of general public importance. Yet resolution of the instant dispute by reference to the parties' stipulation does not in any manner taint the future consideration of that important issue. The impact on nonparties is inconsequential. Further, the stipulation between the parties does not impermissibly invade the prerogatives of this court.

We conclude that the stipulation precludes consideration of whether Little Davis-Bacon authorizes a private right of action to recover back wages. In accordance with the terms of the stipulation, therefore, the award of damages was appropriate.[20]

---

dictates that private settlements and stipulations between the parties are to be favored and should not be lightly set aside." *Id.* (footnote omitted.)

**19.** In *Harris* we refused to allow the parties to stipulate as to the content of jury instructions since "the trial judge has the direct responsibility of correctly instructing the jury." 531 P.2d at 519. Similarly, we declared in *Marks* that "[t]he public interest in criminal appeals does not permit their disposition by party stipulation." 496 P.2d at 67. And most recently, in *Dresser Industries* we rejected the parties' invitation to heed a stipulation which attempted to unduly restrict the judicial review of an administrative regulation.

In rejecting the stipulations at issue in *Dresser Industries* we noted the peculiar policy considerations implicated where stipulations impair a court's assessment of the validity of a regulation. "Laws are not to be declared invalid upon the consent of parties. We must determine their purpose and tendency for ourselves." 633 P.2d at 1005, *quoting, E. Fougera & Co. v. City of New York*, 224 N.Y. 269, 120 N.E. 642, 643 (1918).

**20.** The summary judgment order provides that the Unions will receive as damages the difference between what the employees would have received had the work been classified as public construction with the wage protections of Little Davis-Bacon and what the employees received pursuant to the contract. The order further

The judgment of the superior court is AFFIRMED.

provides that damages are to be paid directly to the workers who performed the reservoir clearing work. We note, though, that no evidence regarding the amount of damages exists in the record. The superior court ordered that the amount of damages will be determined through the submission of memoranda by the parties. We conclude that in the particular context of this case, such a procedure is adequate. The amount of damages can be readily and accurately ascertained since the Department of Labor determines the prevailing wage under 8 AAC 30.050 (Eff. 7/8/73), and both ALP and the Unions should have records which clearly indicate the wages previously received by the workers. If, however, the parties dispute the amount of damages, so that a genuine issue of material fact exists, the superior court must hold a hearing on this question.