Dena' Nena' HENASH, a/k/a Tanana
Chiefs Conference, Inc., Appellant
and Cross–Appellee,

v.

Catherine N. IPALOOK, Appellee
and Cross–Appellant.

Nos. S–8248, S–8268.

Supreme Court of Alaska.

May 21, 1999.

Michael J. Walleri, Tanana Chiefs Conference, Inc., Fairbanks, for Appellant and Cross–Appellee.

James M. Hackett, Law Offices of James M. Hackett, Inc., Fairbanks, for Appellee and Cross–Appellant.

Toby N. Steinberger, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

Catherine Ipalook filed a claim for unpaid overtime and liquidated damages pursuant to the Alaska Wage and Hour Act (AWHA) against her former employer, Tanana Chiefs Conference, Inc. (TCC). She alleged that her position as Patient Hostel Manager (PHM) was improperly classified as exempt from overtime. TCC counterclaimed for a complete offset of any damages, alleging that Ipalook had breached her fiduciary duty to TCC during her prior tenure as president.

Following a bench trial, the court held that Ipalook's position was not exempt from overtime payment and held that she had not breached her fiduciary duty. It awarded Ipalook $77,412.02 in unpaid overtime, an equal amount in liquidated damages, prejudgment interest from the date of the complaint, attorney's fees, and costs. TCC appeals the finding that Ipalook did not breach her fiduciary duty and also appeals the award of liquidated damages. Ipalook cross-appeals from the amount of the overtime pay award and from the prejudgment interest award. We affirm the judgment in favor of Ipalook but reverse the damages award.

## II. FACTS AND PROCEEDINGS

Catherine Ipalook served as the president of TCC from March 1990 until March 1991. During her tenure as president, TCC operated a Patient Hostel in Fairbanks.[1] TCC classified the PHM position as exempt from overtime compensation under the AWHA both before and during Ipalook's tenure as president.

On June 19, 1994, TCC hired Ipalook as the PHM. While Ipalook was in this position, TCC continued to treat the PHM position as exempt. TCC paid Ipalook a salary of $1,916.65 per month and provided her an apartment on the premises of the hostel. As PHM, Ipalook worked at the hostel during the day, but was also on-call twenty-four hours a day from 5:00 p.m. on Sunday until 5:00 p.m. on Friday.

A few months after she was hired as PHM, Ipalook filed a grievance, complaining that she was not accorded proper status as supervisor over the hostel. TCC agreed with Ipalook, but her immediate supervisor continued to deny Ipalook actual supervisory status.

Ipalook resigned from the PHM position on August 18, 1995. On November 21 she filed a wage claim under the AWHA, arguing that she was never actually a supervisor, and was therefore not exempt from overtime compensation. She alleged that she should have been paid overtime for the twenty-four hours per day that she was on-call.

TCC argued that the position was properly classified as exempt since Ipalook was a supervisory or executive employee. It also raised two breach of fiduciary duty counterclaims. Ipalook then filed a third-party complaint against the current president and the current personnel officer of TCC, seeking indemnification from them if she was found liable on either of TCC's counterclaims.

The case was tried to the superior court. The court held that Ipalook was supposed to have been a supervisor, but was never actually given supervisory authority, even after the grievance process. It thus held that Ipalook's position was not exempt from overtime compensation. The court further held that Ipalook had not breached her fiduciary duty to TCC, and that even if she had, her breach was not the legal cause of TCC's liability for overtime compensation.

The court held that Ipalook was entitled to $77,412.02 in overtime pay and an equal amount in mandatory liquidated damages. It calculated the award of overtime based solely on Ipalook's hourly rate, instead of using the parties' stipulated rate, which combined her hourly rate with the value of the employer-provided apartment. In addition, it awarded prejudgment interest from the date Ipalook filed her complaint instead of from each pay period for which overtime was owed.

TCC appeals from the superior court's findings that Ipalook did not breach her fiduciary duty and from the award of liquidated damages. However, it does not appeal the court's finding that Ipalook was a non-exempt employee or the amount of the overtime awarded to Ipalook. Ipalook cross-appeals from the amount of the overtime award and from the amount of the prejudgment interest award.

## III. DISCUSSION

### A. The Superior Court's Findings that Ipalook Did Not Breach Her Fiduciary Duty Were Not Clearly Erroneous.[2]

■ TCC raised two breach of fiduciary duty counterclaims against Ipalook to offset any damages the court awarded to her. First, it claimed that Ipalook breached her

---

1. The Patient Hostel provides lodging for patients who are traveling into Fairbanks from outlying villages to receive medical care.

2. When a case is tried to the superior court, we will only review the court's factual findings to determine if they are clearly erroneous. See State v. Phillips, 470 P.2d 266, 268 (Alaska 1970); see also Alaska R.Civ.P. 52(a); Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks, 934 P.2d 759 (Alaska 1997). A finding is not clearly erroneous unless, from a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. See Phillips, 470 P.2d at 268. We have emphasized that the trial judge, who has seen and heard the testimony, is in a better position than an appellate court to judge the credibility of witnesses and determine the weight to attach to their testimony. See id.

fiduciary duty while president of TCC by failing to correctly classify the PHM position. Second, it claimed that Ipalook breached her continuing fiduciary duty by failing to disclose to TCC, prior to filing her lawsuit, that the PHM position was erroneously classified.

The superior court held that TCC's counterclaims against Ipalook were not viable because Ipalook did not breach her fiduciary duty to TCC, and even if she had, her breach did not cause TCC's liability because the actions of the current TCC president, Will Mayo, were subsequent superceding events. TCC argues that the court's findings that Ipalook was not liable for breaching her fiduciary duty were not supported by the evidence.

■■■■ The first issue is whether the superior court's finding that Ipalook did not breach her fiduciary duty while president was clearly erroneous. "A corporate officer or director stands in a fiduciary relationship to his corporation. Out of this relationship arises the duty of *reasonably protecting* the interests of the corporation." [3] A fiduciary relationship requires the person "to act in good faith and with due regard to the interests of the one imposing the confidence." [4]

Here, the superior court found that Ipalook relied on her department heads in personnel matters, as authorized by TCC's own personnel policies. It also found that the course of conduct of both Ipalook and Mayo was to respond to a problem when it came to their attention. Furthermore, it found that during Ipalook's term, no problem regarding overtime or wage and hour matters came to her attention as president.

We hold that these findings would allow the superior court to find that Ipalook did not breach her duties while president, because she reasonably delegated personnel matters, but would have dealt with any personnel issues that came to her attention. These actions would be sufficient to "reasonably protect[ ] the interests of the corporation." [5]

We also hold that the superior court's factual findings were not clearly erroneous. Ipalook admitted at trial that while in office, she did not take any affirmative action to insure that TCC complied with the AWHA, and never investigated any written job description or classification, including the classification of the PHM position. However, Ipalook also testified that she delegated responsibility for personnel matters to her department heads and to the personnel officer. She specifically stated that updating job descriptions was the responsibility of the personnel officer. She also testified that she would examine a personnel matter if it came to her attention, and would refer it to legal counsel if necessary. However, no wage and hour problems had confronted her while president.

This testimony was supported by the testimony of the current personnel officer, who testified that it was her responsibility to properly classify positions. She also testified that re-classification had historically been done by the personnel officer, and that personnel matters were usually delegated by the president.

Further, the current president stated that the decision of whether a position was exempt or non-exempt would be determined when the position was first created, and that the president would be involved in that decision. He also testified that when the PHM position was first created in the mid–1980s, it was recognized as exempt and has retained that classification from that time. In addition, he testified that he did not investigate the PHM's classification; instead, he relied on his personnel officer to ensure that the position was properly classified.

This testimony demonstrates that it was reasonable for Ipalook to rely on the original classification of the PHM position, because the position opened before Ipalook's tenure as president. Since the classification had already been determined and since she had

**3.** *Alvest, Inc. v. Superior Oil Corp.,* 398 P.2d 213, 215 (Alaska 1965) (emphasis added).

**4.** *Paskvan v. Mesich,* 455 P.2d 229, 232 (Alaska 1969) (footnote omitted).

**5.** *Alvest,* 398 P.2d at 215.

properly delegated personnel matters to her personnel officers and department heads, her failure to investigate when there was not a specific problem was not a breach of fiduciary duty.

■ The second issue is whether the superior court's finding that Ipalook did not breach her continuing fiduciary duty by failing to disclose TCC's liability until she filed her lawsuit was clearly erroneous. This claim is similar to a claim of fraud by non-disclosure, which is one type of breach of fiduciary duty.[6] " 'Fraud can be established by silence or non-disclosure when a fiduciary relationship exists between parties.... The fiduciary has a duty to fully disclose information which might affect the other person's rights and influence his action.' "[7] Even if Ipalook had a continuing fiduciary duty to disclose this type of information, TCC would still have to prove that Ipalook "had knowledge of material facts which [she] failed to disclose to [TCC], and that [TCC] would have acted differently had it known such facts, thereby avoiding damages."[8]

The superior court found that Ipalook, while president, did not fail to disclose any information about the non-exempt status of the PHM position, because she did not have specific knowledge of the matter at the time. The court also found that Ipalook did not breach any continuing fiduciary duty, because the position was historically treated as exempt, and the issue of whether it was properly classified only came to Ipalook's attention after her employment as PHM had ended.

These findings are supported by the evidence. Ipalook testified that she did not know that the position was non-exempt until she spoke with her attorney after she had resigned as PHM. TCC failed to present any contrary evidence to show that Ipalook knew that the position was improperly classified before that time. Therefore, Ipalook did not fail to disclose information that could have relieved TCC of liability. We thus hold that the superior court's finding that Ipalook did not breach her continuing fiduciary duty was not clearly erroneous.[9]

**B.** *The Mandatory Award of Liquidated Damages under the Alaska Wage and Hour Act Is Constitutional.*[10]

■ The trial court held that former AS 23.10.110(a), which was in force until August 22, 1995, applied to this case.[11] It thus held that Ipalook was entitled to $77,412.02 in mandatory liquidated damages. TCC argues that this award violates its federal substantive and procedural due process rights and its state equal protection rights.

1. *The mandatory award of liquidated damages does not violate the substantive or procedural due process guarantees of the United States Constitution.*

■ TCC argues that former AS 23.10.110 violates the substantive due process guarantees of the United States Constitution.

The United States Supreme Court, though, has held that the former version of the liquidated damages provision in the Federal La-

---

**6.** See *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 634 (Alaska 1996).

**7.** *Id.* (quoting *Carter v. Hoblit*, 755 P.2d 1084, 1086 (Alaska 1988) (citations omitted)).

**8.** *Id.* at 635–36 (citing *Carter*, 755 P.2d at 1086).

**9.** Since we hold that the superior court's finding that Ipalook did not breach her fiduciary duty to TCC was not clearly erroneous, we do not reach the causation issue.

**10.** Constitutional issues are questions of law to which this court applies its independent judgment. See *Chiropractors for Justice v. State*, 895 P.2d 962, 966 (Alaska 1995).

**11.** Former AS 23.10.110 provides that an employer who fails to pay overtime compensation is liable for liquidated damages in an amount equal to the amount of unpaid overtime compensation. The award of liquidated damages in this provision is mandatory. See *Alaska Int'l Indus., Inc. v. Musarra*, 602 P.2d 1240, 1249 (Alaska 1979). The current version of AS 23.10.110 gives the court the discretion to refuse to award liquidated damages or to award an amount less than the amount of unpaid overtime compensation if it finds that the employer acted in good faith. However, this amendment only applies to "agreements entered into on or after August 22, 1995." Ch. 37, § 4, SLA 1995. Since Ipalook began as PHM on June 19, 1994, the new amendment does not apply to this cause of action.

bor Standards Act (FLSA), which mandated liquidated damages, is constitutional.[12] It stated:

> The liquidated damages for failure to pay the minimum wages under sections 6(a) and 7(a) are compensation, not a penalty or punishment by the Government. The retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages. Nor can it be said that the exaction is violative of due process. It is not a threat of criminal proceedings or prohibitive fines, such as have been held beyond legislative power by the authorities cited by petitioner. Even double damages treated as penalties have been upheld as within constitutional power.[13]

TCC argues that this case is distinguishable because under the AWHA liquidated damages are a form of punitive damages.[14]

Providing for mandatory liquidated damages as a penalty is not arbitrary, and it serves important state policies by deterring and punishing violations of the AWHA. The stated policy behind the AWHA is to protect "the health, efficiency, and general well-being of workers." [15] · We have emphasized that "the liquidated damages provision of AWHA is intended to further the policy behind the AWHA by punishing the violating employer." [16] The liquidated damages provision is also intended to deter violations of the act.[17] These policies are rational, and are reason-

ably served by the mandatory liquidated damages provision.

Further, this court has affirmed the award of mandatory liquidated damages pursuant to the AWHA in several cases.[18] Our strong support of mandatory liquidated damages under the AWHA in the past suggests that this court should not find this statute arbitrary or irrational.

The fact that we have labeled the liquidated damages provision as punitive in nature does not make the statute arbitrary. We thus hold, as the Supreme Court did in *Missel*,[19] that the mandatory award of liquidated damages does not violate due process.

TCC also argues that the liquidated damages award violates substantive due process because it is excessive. But a liquidated damage provision set by statute does not present the dangers of arbitrary and excessive awards that are inherent in jury awards. Here, the legislature has already determined a reasonable amount for liquidated damages.[20] Mandating a penalty equal to the unpaid overtime compensation is not so obviously unreasonable or so excessive that it violates substantive due process.

TCC also argues that the mandatory award violates procedural due process because this court does not review the award. TCC cites *Honda Motor Co. v. Oberg*[21] which holds that a state system which did not

12. *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

13. *Id.* at 583–84, 62 S.Ct. 1216 (citations and footnotes omitted).

14. *See Gore v. Schlumberger Ltd.,* 703 P.2d 1165, 1165–66 (Alaska 1985) (stating that liquidated damages in the AWHA are "a type of punitive damages, not . . . a substitute for compensatory damages"); *see also Bobich v. Stewart,* 843 P.2d 1232, 1236–37 (Alaska 1992).

15. *McKeown v. Kinney Shoe Corp.,* 820 P.2d 1068, 1070 (Alaska 1991) (quoting AS 23.10.050(2)).

16. *Id.*

17. *See id.*

18. *See, e.g., Alaska Int'l Indus., Inc. v. Musarra,* 602 P.2d 1240 (Alaska 1979) (holding that jury

erred as a matter of law in failing to award liquidated damages in an amount equal to the overtime compensation award); *McKeown v. Kinney Shoe Corp.,* 820 P.2d 1068 (Alaska 1991) (holding that private settlements of liquidated damages claims under the AWHA are void as contrary to the strong policy behind the AWHA and its liquidated damages provisions).

19. 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

20. *See United States v. Citrin,* 972 F.2d 1044, 1051 (9th Cir.1992) ("A statutorily prescribed penalty violates due process rights 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.' ") (citation omitted).

21. 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994).

provide for judicial review of the amount of punitive damages violated procedural due process because appellate courts must ensure that jury awards of punitive damages do not result in arbitrary or irrational deprivations of property. But the danger of arbitrary or irrational awards does not exist where the formula for liquidated damages is statutorily prescribed.[22] We thus reject both of these arguments.

2. *The mandatory award of liquidated damages does not violate the equal protection guarantee of the Alaska Constitution.*[23]

 TCC also argues that the provision violates the equal protection clause of the Alaska Constitution, because it irrationally distinguishes between good faith employers who violated the AWHA prior to the amendments and those who violated the act after the amendment, by punishing only the former with liquidated damages.

We rejected a similar argument in *Alyeska Pipeline Service Co. v. Anderson.*[24] In *Alyeska Pipeline*, we held that the 1980 amendment to AS 09.30.070, which raised the interest rate from 8% to 10.5%, and only applied to judgments entered after the effective date of the act, was not a violation of state or federal equal protection guarantees:

> *Sperry & Hutchinson Co. v. Rhodes,* 220 U.S. 502, 505, 31 S.Ct. 490, 491, 55 L.Ed. 561, 563 (1911) ("[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time."); *Polelle v. Secretary of Health, Education & Welfare of the United States,* 386 F.Supp. 443, 444 n. 4 (N.D.Ill.1974) ("Plaintiff's argument that making this amendment non-retroactive denies equal protection borders on the frivolous."); *see also Application of Brew-*

*er,* 430 P.2d 150, 153 (Alaska 1967) ("To make ... legislation prospective in operation only ... satisfies constitutional requirements of equal protection so long as the law in operating prospectively does not invidiously discriminate between different classes of persons").[25]

Here, the legislature has changed its policy and now allows a good faith defense to the award of liquidated damages. It chose to apply this amendment prospectively to agreements entered into after August 22, 1995. However, the distinction created between employers who fail to pay overtime before and after the effective date is not discriminatory, and is based on a rational decision by the legislature. We thus reject TCC's equal protection argument.

C. *The Superior Court Erred in Failing to Use the Parties' Pretrial Stipulation to Determine Ipalook's Overtime Compensation Rate.*

 Pursuant to the Civil Pretrial Order, the parties filed their written Pretrial Stipulation at the time of the pretrial conference. In relevant part, the stipulation provides:

> 4. that the state minimum wage, at all relevant times during employment of Plaintiff Cathi Ipalook as the Patient Hostel Manager with Defendant TCC, was $4.75 an hour;
>
> 5. that Plaintiff Cathi Ipalook's *straight time rate of compensation* as Patient Hostel Manager with Defendant TCC, at all times relevant, was $15.38 per hour, which rate includes the fair market value of the employer's provided apartment[.]

(Emphasis added.)

Ipalook argues on cross-appeal that the trial court erred in refusing to use the stipu-

---

22. *See Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1165 (S.D.Ind.1997) (refusing to apply the requirement of judicial review from *Oberg* to statutorily prescribed damage awards).

23. Under the rational basis test for equal protection analysis, in order for a classification to survive judicial scrutiny, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and

substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *McConkey v. Hart,* 930 P.2d 402, 407–08 (Alaska 1996) (quoting *Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976)).

24. 669 P.2d 956, 957 (Alaska 1983).

25. *Id.*

lated rate of $15.38 per hour as the "regular rate of pay" to calculate her overtime compensation rate. She argues that the stipulation was intended to be an issue stipulation—that the market value of the apartment should be included in the "regular rate of pay"—and 'a factual stipulation—that the combined hourly rate and value of the apartment was $15.38 per hour.[26]

TCC argues that the stipulation was only intended to demonstrate that Ipalook was paid two-and-a-half times the state minimum wage. It argues that interpreting the stipulation as Ipalook suggests would be beyond the intent of the parties and would be a stipulation of law that was not binding on the superior court.

The superior court accepted the factual stipulation in the agreement—that the value of Ipalook's hourly rate combined with the fair market value of the employer-provided apartment was $15.38 per hour. However, it did not accept the legal or issue stipulation—that the stipulation fixed the regular rate of pay to calculate Ipalook's overtime compensation rate. It stated that

it is unfair to base Ipalook's regular rate on Ipalook's compensation of $11.05 per hour, plus the hourly equivalent of the fair value of the apartment provided, because Ipalook in fact received the apartment.

Thus the court concludes that [the] regular rate for purposes of calculating the amount of Ipalook's unpaid overtime should be based upon $11.05 per hour, instead of being based upon a combination of $11.05 an hour, plus the hourly equivalent of the fair value of the apartment, or the amount of $15.38 an hour which includes the fair value of the apartment.

Consequently the appropriate overtime rate, at time and a half, ... is $16.58 an hour, instead of the figure of $23.08 an hour used by Ipalook's expert witness Ms. Jacqueline Briskey, CPA, (the higher amount of $23.08 an hour includes the

hourly equivalent of the fair value of the apartment).

The first issue is whether the parties intended the stipulation to determine Ipalook's "regular rate of pay" to calculate her overtime compensation rate. This court discussed the construction of stipulations in *Godfrey v. Hemenway*,[27] stating:

[T]he construction of stipulations is governed by the rules of contracts. The primary concern of the courts is to determine the intent of the parties. The courts look with favor on stipulations designed to simplify, shorten or settle litigation, or to save costs and will not give such stipulations a forced construction. Thus, the "[l]anguage of a stipulation, whether it be an agreed statement of facts or relates to other matters, will not be so construed as to give it the effect of a waiver of a right not plainly intended to be relinquished."

(Citations omitted.)

TCC argues that the only purpose of the stipulation was to demonstrate that Ipalook was paid two-and-a-half times the minimum wage to support its argument at trial that she was an exempt executive employee. This argument is contrary to TCC's conduct in the trial, however. It never raised either of the legal issues which it now asserts (either that the apartment should not be included in the regular rate of pay because it was provided for the employer's convenience, or that the proper method of valuing the apartment was to determine its reasonable cost to TCC). It also never introduced any evidence to support these arguments or to contradict the stipulated rate.

Further, Ipalook's "regular rate of pay" was never an issue that was discussed by the parties prior to the court's finding that it would not apply the stipulation. Ipalook's expert calculated the market value of the apartment, which the parties used to enter their stipulation. Her expert then used the stipulated amount as the regular rate of pay to determine Ipalook's total unpaid overtime compensation. TCC never contradicted any of this evidence. We thus hold that the

---

**26.** If the court had accepted the stipulation to fix Ipalook's regular rate of pay, it would have merely multiplied $15.38 times 1.5 to calculate Ipalook's overtime compensation rate. *See* AS 23.10.060(b) (providing that employers must pay overtime in the amount of one and one-half times the employee's "regular rate of pay").

**27.** 617 P.2d 3, 8 (Alaska 1980).

parties intended the stipulation to determine completely Ipalook's "regular rate of pay" to calculate her overtime compensation rate.

■ The second issue is whether this stipulation was binding on the superior court. We have recognized a distinction between stipulations "which merely foreclose consideration of a legal issue," and those "which seek to resolve without judicial scrutiny a legal question."[28] We have given effect to a stipulation which foreclosed consideration of a legal issue, because issue stipulations save time and money for the litigants and for the court, and are often a negotiated compromise in the parties' legal positions.[29] "Sound judicial policy dictates that private settlements and stipulations between the parties are to be favored and should not be lightly set aside."[30]

■ However, " '(a)lthough the parties' efforts toward simplifying the issues in a case are always appreciated, stipulations as to the law are not binding upon the court.' "[31] Stipulations as to law "may have a profound impact on third parties, the public, and the judicial process itself. Accordingly, we have refused to give effect to stipulations regarding a question of law which unduly interfere with vital interests of the public or which impermissibly impinge on judicial functions."[32]

In *Sitka,* we held that a stipulation, which provided that if the union prevailed the remedy would be damages paid to the workers, included a waiver of any legal issue which would defeat the award of damages.[33] We held that the stipulation only barred consideration of an issue, and was not a stipulation of a question of law, even though the issue barred was a legal question of general public importance.[34] We emphasized three factors: (1) resolving this case by referring to the parties' stipulation would not "taint the future consideration of that important issue"; (2) the impact on non-parties is inconsequential; and (3) the stipulation did not impermissibly invade the prerogatives of this court.[35]

The stipulation in this case is an issue stipulation, similar to the stipulation in *Sitka*—instead of an invalid stipulation on a question of law. As in *Sitka,* the stipulation will not affect future consideration of the legal issue, will not impact non-parties, and will not unduly invade our prerogatives. We thus hold that the superior court erred by failing to use the stipulation to determine the regular rate of pay to calculate overtime pay. We vacate the damages award and remand for the court to calculate the damages using the stipulated rate to determine Ipalook's overtime compensation rate.[36]

D. *The Superior Court Should Determine on Remand Whether AS 09.30.070(b) Applies to this Cause of Action.*

The superior court awarded prejudgment interest from November 21, 1995, the date

**28.** *City and Borough of Sitka v. Construction and Gen. Laborers Local 942,* 644 P.2d 227, 234 (Alaska 1982).

**29.** *See id.* at 234–36; *see also Hilbers v. Municipality of Anchorage,* 611 P.2d 31, 39 n. 19 (Alaska 1980) (applying stipulation that plaintiffs would raise only four identified constitutional challenges to reject plaintiff's attempt to raise constitutional challenges on appeal not sanctioned by the stipulation).

**30.** *Sitka,* 644 P.2d at 234 n. 18 (quoting *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1031 (Alaska 1972)) (footnote omitted).

**31.** *Id.* at 235 (quoting *Dresser Indus., Inc. v. Alaska Dep't of Labor,* 633 P.2d 998, 1004 (Alaska 1981)).

**32.** *Id.* (citations and footnote omitted); *see also Dresser Indus.,* 633 P.2d at 1004–06 (rejecting parties' stipulation which attempted to unduly restrict the judicial review of an administrative regulation, because of policy considerations implicated where stipulations impair a court's assessment of the validity of a regulation); *Harris v. Morris,* 531 P.2d 517, 519 (Alaska 1975) (refusing to allow parties to stipulate as to the content of jury instructions since the trial judge is responsible for correctly instructing the jury).

**33.** *Sitka,* 644 P.2d at 234–36.

**34.** *Id.*

**35.** *Id.*

**36.** Because we hold that the superior court should apply the parties' stipulation on remand, we do not reach the issue of whether Ipalook's apartment would have been included in her "regular rate of pay" under AS 23.10.060(b) and the applicable state and federal regulations.

Ipalook filed her complaint. Ipalook argues that the court should have awarded prejudgment interest from the date of each pay period for which overtime was owed, because that is when the cause of action accrued. She argues that AS 09.30.070(b), which limits the award of prejudgment interest to the date the defendant received notice of the action, does not apply to this action.[37]

To determine whether the superior court correctly calculated prejudgment interest, we must first determine whether AS 09.30.070(b) applies to this action. However, neither party adequately briefed this issue. In several recent cases, we have noted that AS 09.30.070(b) might only apply to actions for "personal injury, death, or damage to property," but we have not yet resolved this issue.[38]

In *Hanson v. Kake Tribal Corp.*,[39] we refused to reach the issue of whether AS 09.30.070(b) applied to a contract claim because neither party had adequately briefed the issue. However, we also refused to find that the issue had been waived, instead allowing the trial court to determine the issue on remand since prejudgment interest would have to be recalculated on remand anyway.[40] We again follow this procedure. Since we are remanding for the court to recalculate the amount of overtime compensation, it would also have to recalculate the prejudgment interest award. Thus, as we did in *Hanson*, we direct the superior court to determine on remand whether AS 09.30.070(b) applies to this action.

## IV. CONCLUSION

We AFFIRM the superior court's findings that Ipalook did not breach her fiduciary duties and reject TCC's arguments that the award of mandatory liquidated damages is

unconstitutional. However, we VACATE and REMAND the damages award, because the superior court erred in failing to use the parties' stipulated regular rate of pay to calculate Ipalook's overtime compensation rate. On remand, the superior court should allow the parties to argue whether AS 09.30.070(b) applies to this action.

---

**37.** AS 09.30.070 provides in relevant part:

(b) Except when the court finds that the parties have agreed otherwise, prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier. The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.

Ipalook argues that the parties in this case have "agreed otherwise"—both through stipulation and through the application of AS 23.05.140.

**38.** *See, e.g., Johnson v. Olympic Liquidating Trust,* 953 P.2d 494, 499 n. 4 (Alaska 1998); *Hofmann v. von Wirth,* 907 P.2d 454, 455 n. 2 (Alaska 1995).

**39.** 939 P.2d 1320, 1330–31 (Alaska 1997).

