James JOHNSON, Edye Risener,
and Al Risener, Appellants
and Cross–Appellees,

v.

OLYMPIC LIQUIDATING TRUST,
Appellee and Cross–Appellant.

Nos. S–7378, S–7408.

Supreme Court of Alaska.

Jan. 30, 1998.

Victor C. Krumm, Law Office of Victor C. Krumm, P.A., Sarasota, FL, for Appellants/Cross–Appellees.

Cabot Christianson, Gary A. Spraker, Bundy & Christianson, Anchorage, for Appellee/Cross–Appellant.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

MATTHEWS, Justice.

### I. *INTRODUCTION*

James Johnson, Edye Risener and Al Risener appeal the superior court's grant of summary judgment holding them liable on a non-negotiable promissory note. They contend that the note was procured by fraud and is avoidable. Assuming that part of the note is touched by fraud, we conclude that they may not avoid the portion of the note representing valid debt. We affirm the superior court as to the grant of summary judgment. We reverse the superior court's award of attorney's fees to the Olympic Liquidating Trust, and remand for further proceedings.

### II. *FACTS AND PROCEEDINGS*

The Olympic Liquidating Trust (Trust) was created by the United States Bankruptcy Court in the wake of the bankruptcy of Anchorage businessman Peter Zamarello and two of his corporations. Pursuant to the order creating the Trust, property of one of the bankrupt corporations, Olympic, Inc., was placed in the Trust for purposes of liquidation. The proceeds were to be distributed to the Trust's beneficiaries, Olympic, Inc.'s creditors. Among the property placed in the Trust was a lawsuit denominated *Olympic, Inc. v. James Johnson; Edye Risener and Al Risener*, 3AN–94–639 Civil. Under the terms of the debtor's reorganization plan, the Trust was entitled to receive the lesser of $200,000 or 50% of the proceeds of the lawsuit.

The underlying lawsuit arose out of business dealings between Peter Zamarello on the one hand and James Johnson and Edye Risener and Al Risener on the other. Johnson and the Riseners were the principals of a corporation called "40, Inc." The main business of 40, Inc. was the operation of two Anchorage bowling alleys, East 40 Bowl and South 40 Bowl. 40, Inc. leased these bowling alleys from Olympic, Inc. Zamarello was, at least at one time, a principal of Olympic, Inc.

On October 21, 1985, Johnson and the Riseners signed a promissory note in the amount of $500,000 in favor of Olympic, Inc. (the 1985 note). This $500,000 represented amounts owed by Johnson and the Riseners for bowling equipment, improvements to the leased premises, and a liquor license. They defaulted on the note and fell behind on the payments due under the bowling alley leases.

To remedy this problem, a second promissory note was negotiated at a meeting where Zamarello, Johnson and the Riseners were present. This second note, in the amount of

$1,049,000, was signed on August 20, 1986, in favor of Eastgate, Inc., another corporation with which Zamarello was involved (the 1986 note). The amount of the note was made up of an accumulation of smaller debts. These debts included the $500,000 still owing on the 1985 note; $253,655 in back rent; and $289,000 in construction costs that Zamarello claimed to have paid on behalf of Johnson and the Riseners to a company called Strand, Inc. Johnson and the Riseners contend that they, at all times during the meeting, disputed the actual amount of their indebtedness to Zamarello or his corporations and that they signed the second note only after a lengthy argument with Zamarello. Pursuant to the signing of the 1986 note, the 1985 note was marked "cancelled 8/20/86" and "replaced 8–20–86."

Meanwhile, in preparation for the impending bankruptcy, Zamarello had been transferring all of Olympic, Inc.'s assets to Eastgate, Inc. On August 21, 1986, the day after the 1986 note was signed, Olympic, Inc. filed for Chapter 11 bankruptcy protection. The bankruptcy court ordered Eastgate, Inc. to return all of the Olympic, Inc. assets that had been transferred to it. This order included "[a]ll net rents, profits and proceeds received by Eastgate, Inc. . . . ."

Johnson and the Riseners never made a payment on the 1986 note. On January 4, 1988, Olympic, Inc. filed suit against Johnson and the Riseners for the $1,049,000 owed on the 1986 note. This lawsuit became, in part, the property of the Olympic Liquidating Trust. Johnson and the Riseners were later able to settle with Olympic, Inc. for $10,000. The Trust learned of the impending settlement and began to seek a method of intervening in the litigation. Ultimately, Johnson and the Riseners stipulated that the Trust would be allowed to bring suit on its own to enforce its interest in the note, provided that they be allowed to raise any defenses they had against Olympic, Inc. against the Trust.

The Trust brought that suit on January 19, 1994. The complaint alleged only that Johnson and the Riseners were liable to the Trust on the 1986 note. On February 8, 1995, the Trust moved for summary judgment on the ground that there were no material facts in dispute and Johnson and the Riseners were liable to the Trust to the $200,000 limit as a matter of law.

Johnson and the Riseners, in their answer and opposition to the Trust's motion, defended on the grounds that there were material facts in dispute as to whether the 1986 note was voidable due to fraud and whether there was consideration for the note. They also argued that there were issues of fact as to one, or more, defective assignments of the note, and that Zamarello lacked the authority to bind Eastgate or Olympic, Inc. at the time the note was made.

The superior court found, as a matter of law, that Johnson and the Riseners were liable to the Trust at least to the extent of its maximum allowable recovery. The court reasoned that, even if the fraud issue could be proven and the 1986 note avoided, Johnson and the Riseners would then be liable in the amount of $500,000 on the 1985 note. Accordingly, the superior court granted summary judgment on the $500,000 1985 note. The Trust was awarded its $200,000 maximum recovery, $16,500 in attorney's fees, $106,284.60 in prejudgment interest, and $1,450.33 in costs.

Johnson and the Riseners appeal, contending that the superior court erred in entering summary judgment in favor of the Trust. They also appeal the award of prejudgment interest. The Trust cross-appeals the amount of the attorney's fees award.

### III. *STANDARD OF REVIEW*

A superior court's grant of summary judgment must be affirmed if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Public Safety Employees Ass'n, Local 92 v. State,* 895 P.2d 980, 984 (Alaska 1995). This inquiry is conducted without deference to the ruling of the superior court. *Martech Constr. Co. v. Ogden Envtl. Serv., Inc.,* 852 P.2d 1146, 1149 (Alaska 1993). All reasonable factual inferences must be drawn in favor of the party opposing summary judgment. *Id.*

The time when prejudgment interest begins to accrue is a question of law which we review using our independent judgment. *Tookalook Sales and Serv. v. McGahan,* 846 P.2d 127, 129 (Alaska 1993). Interpretation of an attorney's fees clause in a contract is also a question of law. We use our independent judgment in making such an interpretation. *A & G Constr. Co. v. Reid Bros. Logging Co.,* 547 P.2d 1207, 1212–13 (Alaska 1976).

## IV. DISCUSSION

### A. Did the Superior Court Err in Granting Summary Judgment in Favor of the Trust?

#### 1. Fraud in the inducement regarding the 1986 note

Johnson and the Riseners first argue that it was improper for the superior court to grant summary judgment on the 1985 note, when that note was not specifically put at issue by the parties' pleadings or the Trust's motion for summary judgment. They have framed this argument as one claiming a denial of due process of law under the Alaska Constitution. It is true that the 1985 note was not specifically raised in the pleadings or in the Trust's motion for summary judgment. However, we find the superior court's grant of summary judgment proper as an application of the doctrines relating to the avoidability of contracts. Namely, when a clearly delineated and severable part of a contract is avoidable due to fraud, it is only that part which may be avoided.

Johnson and the Riseners rightly contend that a contract induced by fraud is avoidable at the election of the defrauded party. They base their claim of fraud on their allegations that Zamarello demanded that they sign the 1986 note and

> [w]hen they protested and said that they did not owe anybody that amount of money, Zamarello presented them with a list of alleged debts that were owed. The first item on that list was for $289,000, which Zamarello claimed had been paid to Strand, Inc. for tenant improvements made to one of the 40, Inc. bowling al-

leys.... The representation was completely false.

Nonetheless, Johnson and the Riseners signed the 1986 note. Apparently, they were later sued by Strand, Inc. for $289,000.

The Restatement (Second) of Contracts § 164(1) (1981) reads:

> If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.

Assuming that the parties' conduct falls within this section, this does not give rise to a disputed issue of material fact. As the Trust points out, "[o]nly disputed issues of *material* fact preclude entry of summary judgment. Alaska R. Civ. P. 56. A fact is material only if it may effect [sic] the outcome of the case. *See Beck v. Haines Terminal & Highway Co.,* 843 P.2d 1229, 1231 (Alaska 1992)." (Emphasis in original.)

When a contract comprises several distinct parts or performances, a right of avoidance as to one part or performance does not give rise to a right of avoidance as to the entire contract. *Conley v. Texas Co.,* 289 S.W. 169, 172 (Tex.Civ.App.1926) ("[W]here a contract is composed of several distinct and divisible parts, one of the parties cannot rescind as to such severable part ... in respect to which no breach has occurred."); *see also B.F. Sturtevant Co. v. Le Mars Gas Co.,* 188 Iowa 584, 176 N.W. 338, 341 (1920) (holding a contract to be divisible although contained in one instrument); *Wooten v. Walters,* 110 N.C. 251, 14 S.E. 734, 736 (1892) ("When ... the plaintiff avoided the contract ... as to the land ... he did not avoid the contract as to the stock of goods. The contract was severable, and, as to the goods, was valid and remained of force and continued to have effect."). A contract is severable for purposes of the above rule when it is of such a nature that it is clear that the formation of the contract itself was not dependent on all of its parts together, but rather that it could just as well have been entered into as several different agreements. *See Conley,* 289 S.W. at 172; *Butler v. Prentiss,* 158 N.Y. 49, 52 N.E. 652, 656 (1899) (holding contract entire

when plaintiff would not have assented to one part unless he assented to all).

Here, Johnson and the Riseners contend only that $289,000 of the amount owed under the note was touched by fraud. It is clear that a $500,000 portion of the 1986 note, representing the amount owed on the 1985 note, and a $253,655 portion, representing back rent, were valid debts. Therefore, Johnson and the Riseners have no right to avoid the note at least to the extent of these sums. There is no issue of material fact as to their liability in this amount. The Trust is, therefore, entitled to judgment as a matter of law.

Johnson and the Riseners further argue that disputed material facts exist as to their entitlement to certain set-offs which would reduce their liability to below the $200,000 mark. Specifically, they allege a $170,000 set-off for "assorted indebtedness owed by Olympic" and a $10,000 set-off for the amount paid to Olympic, Inc. in the original settlement of the lawsuit. This, again, fails to raise an issue of fact that would preclude summary judgment. Even were the set-offs allowed against the valid debts, the net amount owed by Johnson and the Riseners would still total more than double the $200,000 limit.[1] In their brief, Johnson and the Riseners claim that "[these sums are] not intended to be exhaustive of the set-off claims. A party opposing summary judgment need not produce all of the evidence it may have at its disposal but need show only that issues of fact are in existence." Be this as it may, a party must bring forth enough evidence to show that a disputed fact is material to the outcome of the lawsuit. Johnson and the Riseners have failed to do this.[2]

Johnson and the Riseners have failed to show that any issue of fact exists as to whether they are liable for at least twice the $200,000 limit. Given that the Trust is limited to a recovery of the lesser of $200,000 or 50% of litigation proceeds, any dispute as to the precise amount of liability above $400,000 is not material to the Trust's recovery and thus cannot bar summary judgment.

### 2. Lack of one or more valid assignments

Johnson and the Riseners next argue that there existed a material issue of fact as to whether Olympic, Inc., and the Trust standing in its shoes, had the ability to enforce the 1986 note, as there was no evidence of a valid assignment of the note from Eastgate, Inc., in the favor of which the note was made, to Olympic, Inc. This argument fails as well.

As persuasively put by the Trust, this contention "does not properly account for the Order Avoiding Transfers of Property dated January 21, 1987, entered in the *Olympic* bankruptcy proceedings." That order "unwound" all of Zamarello's transfers of Olympic, Inc.'s property to Eastgate, Inc. The court ordered that "[a]ll net rents, profits and proceeds received by Eastgate, Inc., ... shall be immediately turned over to [Olympic, Inc.]." This encompasses the transfer represented by the 1986 note and effected a valid transfer of that note from Eastgate, Inc. to Olympic, Inc.

Finally, Johnson and the Riseners attempt to raise an issue of material fact regarding Zamarello's authority to enter into an agreement on behalf of Eastgate, Inc. or Olympic, Inc. with regard to the 1986 note. This argument is also rejected. Whatever Zamarello's status on the relevant dates as an agent of either or both Olympic, Inc. and Eastgate, Inc., a principal may affirm the unauthorized conduct of another through conduct "manifesting that he consents to be a party to the transaction, or by conduct justifiable only if there is a ratification." Re-

---

1. Edye Risener estimated that the group's true indebtedness to Zamarello's corporations was approximately $600,000. Assuming off-sets of $180,000, the resulting judgment based on their admission would still exceed $400,000.

2. Johnson and the Riseners also claim a set-off in the amount of $289,000 for the "Strand debt."

As discussed above, if this court assumes that part of the 1986 note was procured by fraud and is avoidable, the Strand debt is avoided with it. Johnson and the Riseners cannot both have the portion of the note representing the debt avoided and also claim a set-off for the amount of that debt.

statement (Second) of Agency § 93(1) (1958). Bringing suit on an obligation which was entered into by a person without authority is one example of conduct evincing ratification. *Id.* at § 97; *cf. Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116–19 (Alaska 1990) (ratification by implied acquiescence). When Olympic, Inc. brought suit on the 1986 note, the question as to whether Zamarello had authority to bind it to that obligation was closed. Thus, the Trust was entitled to judgment as a matter of law on this issue.

The superior court's grant of summary judgment awarding the Trust $200,000 is affirmed.

### B. Did the Trial Court Err in Granting the Trust Prejudgment Interest?

The superior court awarded the Trust $106,284.60 in prejudgment interest. It arrived at this amount by applying the 9% interest rate of the 1986 note to the $200,000 award from the date the Trust was created, December 1, 1989, to the date judgment was entered, October 26, 1996.[3] Johnson and the Riseners contend both that the Trust is not entitled to prejudgment interest and that, if it is entitled to prejudgment interest, the superior court miscalculated the amount owed.

■ We reject the argument as to the Trust's right to receive prejudgment interest on its award. Johnson and the Riseners point to Article VI, paragraph 6.9, of the reorganization plan of Olympic, Inc. as a limit on the Trust's right to collect interest on the judgment. That provision reads:

*Distribution Upon Allowance.* At such time as a Disputed Claim or Disputed Interest becomes an Allowed Claim or an Allowed Interest, the distributions reserved for such Allowed Claim or Allowed Interest (*without any interest thereon*) shall be withdrawn from the Contested Fund and distributed to the [Trust] as [its]

interests may appear, and thereafter to the holder of such Allowed Claim or Allowed Interest.

We first note that Johnson and the Riseners failed to raise this provision of the reorganization plan in the court below. We need not address the issue on appeal. *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991). Even were we to review the issue, it is clear that it is meritless. The quoted provision is aimed at the satisfaction of creditors' claims against the bankruptcy estate. It has no bearing on the Trust's ability to recover here.

■ Johnson and the Riseners next argue that prejudgment interest should only have been awarded from the date the Trust filed its lawsuit, rather than from the date the Trust came into being. Alaska Statute 09.30.070(b) provides:

Except when the court finds that the parties have agreed otherwise, prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier. The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.[4]

Johnson and the Riseners contend that prejudgment interest should only accrue from the date that they were served with process in *this* case—a date after the Trust was created. This argument fails. Johnson and the Riseners had already been served with process in the underlying suit brought by Olympic, Inc., and were well into litigation, when the Trust came into existence. The service of process in the Olympic, Inc. case served to give the notice required by AS

---

3. It charged Johnson and the Riseners $49.32 per day in interest for 2,155 days.

4. Both parties assume that AS 09.30.070 is the controlling statute. We note that this question is an open one. It may be that AS 09.30.070(b) only applies to cases involving "personal injury,

death, or damage to property." *See Hofmann v. von Wirth*, 907 P.2d 454, 455 n. 2 (Alaska 1995); *Tookalook Sales and Serv. v. McGahan*, 846 P.2d 127, 129 (Alaska 1993). We need not dispose of the issue to resolve the case before us.

09.30.070(b). We affirm the superior court's award of prejudgment interest.

### C. Did the Trial Court Err in Awarding Attorney's Fees at the Civil Rule 82 Rate?

The Trust cross-appeals on the ground that the superior court erred in awarding it attorney's fees at the Civil Rule 82 rate.[5] The trial court awarded the Trust $16,500 in attorney's fees. The Trust's actual fees were approximately $31,789.50. The Trust contends that it is entitled to reasonable actual attorney's fees under the provisions of the 1986 note. The 1986 note reads:

> In case this note is placed in the hands of an attorney for collection or in the event suit is instituted to collect this note or any portion thereof, the undersigned promises to pay, in addition to the costs and disbursements provided by statute, such additional sums as the court may adjudge reasonable for attorney fees to be allowed in said suit or action.

Under Alaska law, an attorney's fees provision in a contract controls an award of attorney's fees. *Jackson v. Barbero*, 776 P.2d 786, 788 (Alaska 1989) (noting that the plain meaning of a contract provision prevails over any limitation otherwise imposed by Civil Rule 82). It appears that the trial judge applied the Civil Rule 82 formula to the award at issue here. We remand this issue and direct the superior court to determine a reasonable award of attorney's fees under the contract provision.

### V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment in favor of the Trust to the extent of its $200,000 limitation on recovery. We also AFFIRM the award of prejudgment interest. We REVERSE the award of attorney's fees to the Trust and REMAND for proceedings consistent with the above discussion.

**5.** The trial court did not explicitly refer to Civil Rule 82 in making its $16,500 award of attor-

ney's fees. However, this is the amount that is arrived at if the Rule 82 formula is applied.