**MATANUSKA ELECTRIC ASSOCIATION, INC.,**
Appellant,

v.

**CHUGACH ELECTRIC ASSOCIATION, INC., Appellee.**

No. S–10080.

Supreme Court of Alaska.

Nov. 15, 2002.

Stephen M. Ellis and Jeffrey P. Stark, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellant.

James E. Torgerson, Heller, Ehrman, White & McAuliffe, Anchorage, and Donald W. Edwards, Chugach Electric Association, Anchorage, for Appellee.

Before: FABE, Chief Justice, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Chugach Electric Association brought an action in the superior court seeking a declaratory judgment that the order of the Regulatory Commission of Alaska requiring Matanuska Electric Association to pay an adjusted fuel surcharge was enforceable. Matanuska counter-claimed that Chugach breached an agreement between the parties governing "rates, charges, or other tariff provisions" and sought declaratory relief. The superior court granted summary judgment in favor of Chugach. Matanuska appeals on the basis that the commission lacked jurisdiction to interpret the contract and that Matanuska's breach of contract claim is not precluded by collateral estoppel. Because we conclude that the dispute in this case centered on a contractual provision dealing with ratemaking issues falling within the commission's core jurisdiction and that Matanuska could have appealed the commission's decision, we affirm the superior court's grant of summary judgment in favor of Chugach.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Matanuska Electric Association, Inc. (MEA) and Chugach Electric Association, Inc. are electrical utility corporations organized under AS 10.25.  Both are subject to the regulatory authority of the Regulatory Commission of Alaska under AS 42.05.141. MEA does not produce the electricity that it sells to customers, but instead purchases the power from Chugach.  The terms of these purchases are governed by a purchase and sale agreement (PSA), which was entered into on January 30, 1989 by MEA, Chugach, and the Alaska Electric Generation and Transmission Cooperative, Inc. and approved by the commission.  Under the PSA, MEA is obligated to pay a *pro rata* portion of the actual costs incurred by Chugach in generating and transmitting the electricity.

On February 4, 1999 Chugach sent MEA a letter stating that Chugach was being assessed additional taxes and interest on gas that it purchased from the Marathon Oil Company due to a settlement between Marathon Oil and the State of Alaska (Marathon settlement).  Chugach informed MEA that it would be passing $644,750, MEA's pro rata portion, on to MEA through the fuel surcharge rate adjustment process.  MEA responded with a letter on February 11, 1999 stating that the recovery of these additional charges should be implemented through the procedures agreed to in the PSA, specifically in § 9(d).[1]

On February 16, 1999 Chugach filed tariff advice letter number (TA) 194–8 with the commission that, among other things, asked that Chugach be allowed to recover the liabilities incurred from the Marathon settlement in the amount of $645,000 through a twelve-month increase in the fuel surcharge rate, beginning January 1, 1999.  MEA filed its objections to TA 194–8 with the commission on March 12, 1999.  MEA argued that Chugach's proposal was problematic for several reasons, including that fuel surcharges were an inappropriate means of recovering these types of costs and that the proposal violated § 9(d) of the PSA.  On March 26, 1999 the commission concurred with a utility tariff analyst's recommendation to approve TA 194–8 to the extent that Chugach be allowed to recover the Marathon settlement through fuel surcharges.  In the recommendation, the analyst noted that "the additional Marathon taxes and royalties are uncommon, but not inappropriate, expenses pursuant to the Chugach/Marathon contract."

Chugach filed its next quarterly tariff advice letter, TA 196–8, on May 17, 1999, incorporating the additional charges to recover its Marathon-settlement liabilities that the commission had approved in its March 26 order.  MEA objected to the new tariff advice letter on June 8, 1999, again claiming that Chugach's treatment of the Marathon settlement costs violated § 9(d) of the PSA.  On June 25, 1999 a commission tariff analyst issued a recommendation addressing a number of issues raised by Chugach's tariff filing; regarding MEA's objection on the Marathon settlement issue, the analyst recommended that no action was necessary, since the commission had already ruled on the issue: "In the last surcharge filing, TA 194–8, MEA objected to Chugach's inclusion of Marathon

---

1.  Section 9(d) of the PSA states in relevant part:

Before Chugach implements any change in rates, charges, or other tariff provisions applicable to power sold under this Agreement (other than interim tariff charges under Section 9(h) below), the Chugach staff will submit the proposed change, together with such explanatory material as the Chugach staff has prepared (including materials prepared for submission to the Commission) to a Joint Committee for review.  The Joint Committee shall consist of three members, two appointed from the Chugach Board of Directors and one appointed from the AEG & T Board of Directors (which member shall also be a member of the MEA Board of Directors), such

members to serve at the pleasure of their respective Boards.  The Chugach staff shall supply directly to MEA and to AEG & T copies of all materials submitted to the Joint Committee.

Section 9(h) states:

*Interim Ratemaking.*  Nothing in this Agreement shall preclude Chugach's use of other or abbreviated procedures to develop interim rates for immediate effectiveness (subject to such regulatory constraints as may exist at the time).  All such interim rates shall be subject to refunds if the rates finally adopted and approved for the period during which the interim rates were in effect are lower than the interim rates.

natural gas tax liabilities in the fuel surcharge balancing accounts. MEA again objects to the inclusion of these costs. Staff believes the Commission has adjudicated this matter and no further determination is necessary." The commission approved its staff's recommendations by order dated June 28, 1999.

On August 16, 1999 Chugach filed another quarterly tariff advice letter, TA 202–8, again incorporating the previously authorized increase in the fuel surcharge rate to recoup its Marathon-settlement liabilities. MEA objected yet again on the basis that Chugach had failed to comply with § 9(d) of the PSA. As before, the commission's staff recommended no action in response to MEA's objection, noting in a memorandum dated September 28, 1999, that the commission had already decided the issue when it approved Chugach's first quarterly tariff letter, TA 194–8, and that its decision was now final:

> In TA 194–8, the Commission approved Chugach's treatment of Marathon natural gas taxes and other liabilities. Although MEA filed objections to TA 194–8, it did not request to intervene in that proceeding. Furthermore, the Commission did not suspend TA 194–8. The reconsideration period for that decision has ended.

The commission approved the staff recommendation on October 1, 1999.

### B. Proceedings

On October 13, 1999 Chugach filed for declaratory and injunctive relief against MEA in the superior court. Chugach asked the superior court to rule that Chugach was entitled to a payment from MEA in the amount of MEA's quarterly pro rata share of the Marathon settlement. Chugach also asked for a declaration that MEA was bound by the commission's orders in regards to Chugach's tariff advice letters, and a declaration that the dispute is not covered by the PSA. MEA answered the complaint and counterclaimed for declaratory relief for breach of contract. Chugach then moved for

summary judgment, arguing that the PSA allowed the commission to establish rates and that statutory law established that MEA was bound by the orders of the commission to pay these rates. MEA filed a cross-motion for summary judgment asking the superior court to grant its counterclaim for declaratory relief for breach of contract.

On December 13, 2000 the superior court found that the PSA specifically ceded authority over ratemaking to the commission and that statutory law gives the commission plenary authority over ratemaking. Therefore, the superior court held, the commission had jurisdiction to hear MEA's breach of contract claim. The superior court went on to hold that MEA took full advantage of its opportunity to participate in the proceedings and that the commission specifically decided the issue raised in the superior court. Also, the superior court found that MEA failed to appeal the commission's decisions by the appropriate deadlines. The superior court issued its amended final judgment in Chugach's favor on April 4, 2001.

MEA now appeals that decision.

### III. STANDARD OF REVIEW

■■■ We review an appeal from summary judgment *de novo*.[2] "A superior court's grant of summary judgment must be affirmed if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[3] "All reasonable factual inferences must be drawn in favor of the party opposing summary judgment."[4] On questions of law, we will "adopt the rule of law which is most persuasive in light of precedent, reason and policy."[5]

### IV. DISCUSSION

**The Superior Court Did Not Err in Finding that the Commission Has Jurisdiction To Decide the Contract Dispute Between MEA and Chugach.**

■■■ MEA argues that the superior court erred in granting Chugach's motion for sum-

---

**2.** *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1017 (Alaska 1998).

**3.** *Johnson v. Olympic Liquidating Trust,* 953 P.2d 494, 496 (Alaska 1998).

**4.** *Id.*

**5.** *Ganz,* 963 P.2d at 1017 (internal quotations omitted).

mary judgment because the commission did not have jurisdiction to interpret the PSA. MEA's argument rests on the premise that the commission is a regulatory body set up to establish utility rates, not to settle contract disputes. The dispute on appeal is whether the PSA imposes a duty on Chugach to convene a Joint Committee prior to passing fees from the Marathon settlement on to MEA. Chugach argues that the parties intended the commission to have jurisdiction over the PSA as evidenced by § 9(e) of the PSA.[6]

We hold that, in entering into a private contract, MEA and Chugach were capable of bargaining over the method of dispute resolution that would be used in settling contract disputes. As evidenced by § 9(e)(3) of the PSA, the parties agreed to have issues of interpretation of the PSA determined by the commission. In cases involving other types of contracts, we have held that parties to a contract are bound by the terms of the contract and, particularly, by dispute resolution procedures of that contract.[7]

Moreover, AS 45.05.141[8] gives the commission the power to "do all things necessary or proper to carry out the purposes and exercise the powers" it is granted in the law. As we have stated:

This provision presents two guiding principles for determining the extent of the [commission]'s jurisdiction under specific provisions of the Act. On the one hand, it includes a principle of limitation, restricting the [commission]'s power to the specific jurisdictional areas of its "stated purposes." On the other hand, it includes a principle of expansion, mandating that the [commission]'s power to act within its specific areas of jurisdiction "is to be liberally construed." [9]

Because § 9(d) of the PSA expressly deals with issues lying within the commission's core area of jurisdiction—changes in rates, charges or other tariff provisions—and because § 9(e)(3) evinces the parties' intent to submit to the commission any rate-related disputes arising under the PSA, we conclude that interpretation of § 9(d) was within the jurisdiction of the commission. Accordingly, we affirm the decision of the superior court in granting Chugach's motion for summary judgment.

Because we hold that the commission is the appropriate venue for disputes concerning § 9(d) of the PSA, we need not reach the issue whether MEA was collaterally estopped from bringing its breach of contract claim in

---

6. Section 9(e) states in relevant part:

*Commission Review.* So long as the Commission continues to review rates and charges applicable hereunder:

(1) Chugach shall submit its final decision on rates and charges to the Commission for approval, together with a complete copy of the ratemaking record (if any) compiled by Chugach pursuant to Section 9(d)(4) of this Agreement.

(2) New rates and charges under this Agreement shall not become effective until reviewed and approved by the Commission, either on a final basis or an interim basis subject to refunds if the rates and charges finally approved are lower than those approved on an interim basis.

(3) AEG & T and/or MEA shall be entitled to raise before the Commission any objection or argument to the effect that the rates and charges as submitted to the Commission violate the substantive ratemaking principles set forth in this Agreement or were adopted in violation of the ratemaking procedures set forth in this Agreement or violate any other provision of this Agreement.

7. *See Diedrich v. City of Ketchikan,* 805 P.2d 362, 367 (Alaska 1991) ("[W]hen an employee enters

into a contract that contains grievance procedures, it is not a denial of the right to a jury trial to require the employee to follow those procedures."); *Sourdough Freight Lines, Inc. v. Local No. 959, Int'l Bhd. of Teamsters,* 602 P.2d 430, 431–32 (Alaska 1979) ("[U]nder a collective bargaining agreement the court should defer to whatever means of dispute resolution the parties themselves have agreed to."); *Inman v. Clyde Hall Drilling Co.,* 369 P.2d 498, 500 (Alaska 1962) ("[W]e start with the basic tenet that competent parties are free to make contracts and that they should be bound by their agreements.").

8. AS 42.05.141 states in relevant part:

(a) The Regulatory Commission of Alaska may do all things necessary or proper to carry out the purposes and exercise the powers expressly granted or reasonably implied in this chapter, including

. . . .

(3) make or require just, fair, and reasonable rates, classifications, regulations, practices, services, and facilities for a public utility;

9. *Homer Elec. Ass'n v. City of Kenai,* 816 P.2d 182, 186 (Alaska 1991) (internal citations omitted).

the superior court. We hold that the commission had the power to interpret the PSA and that MEA should have appealed from the commission's decision if it felt that this decision was in error.

## V. CONCLUSION

Because the PSA gave the commission the power to interpret the PSA and that interpretation of the PSA is within the scope of the commission's power to set rates, we AFFIRM the decision of the superior court.

MATTHEWS and EASTAUGH, Justices, not participating.